IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

SSC STATESVILLE MAPLE LEAF )
OPERATING COMPANY LLC, )
 )
 )
              Plaintiff, )
 )
 )
 )
  vs. )
 ) Civil Action No. _____
 )
WILLIAM P. MORGAN, JR., Administra- )
tor of the Estate of DOROTHY MAE LAW )
MORGAN, deceased, )
 )
             Defendant. )
 )
_____ )

## COMPLAINT TO COMPEL ARBITRATION

**NOW COMES** Plaintiff SSC Statesville Maple Leaf Operating Company LLC ("SSC Statesville Operating), and for its cause of action, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff SSC Statesville Operating and all of the other entities identified in this paragraph are Delaware limited liability companies. SSC Submaster Holdings LLC has a one hundred percent membership interest in Plaintiff SSC Statesville Operating; SSC Equity Holdings, LLC has a one hundred percent membership interest in SSC Submaster Holdings LLC; SavaSeniorCare, LLC is the sole equity member of SSC Equity Holdings, LLC; SVCARE Holdings LLC has a one hundred percent membership interest in SavaSeniorCare, LLC; Canyon Sudar Partners, LLC has a one hundred percent membership interest SVCARE Holdings LLC; finally, Canyon Sudar Partners, LLC has two members, real persons who are citizens of New York and New Jersey, respectively.

2. Defendant William P. Morgan, Jr. is a citizen of Iredell County, North Carolina and the purported executor of the estate of Dorothy Mae Law Morgan, deceased.

3. Based on information and belief, Ms. Morgan was a North Carolina citizen at the time of her death and at all times relevant to this Complaint.

4. This Court has jurisdiction over the subject matter of this action and the parties hereto pursuant to 28 U.S.C. § 1332(a)(1) and 9 U.S.C. § 4 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This judicial district is a proper venue under 28 U.S.C. § 1391(a) because Defendant resides, and is subject to service of process, in this district and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this district.

## FACTUAL BACKGROUND

6. On January 5, 2011, Defendant, pursuant to a general "Power of Attorney" ("Power of Attorney"), executed a "Resident Admission and Financial Agreement" ("Admission Contract") to obtain care for his mother, Ms. Morgan, at Statesville. A true and correct copy of the Admission Contract is attached as **Exhibit A**. Also pursuant to the Power of Attorney, Defendant signed an optional "Agreement for Dispute Resolution Program" ("DRP"), which contains an Arbitration Agreement ("Arbitration Agreement"). A true and correct copy of the DRP is attached as **Exhibit B**. A true and correct copy of the Power of Attorney is attached as **Exhibit C**. Ms. Morgan was admitted to the Facility on January 6, 2011.

### A. <u>Power of Attorney</u>

7. Pursuant to the Power of Attorney, Ms. Morgan appointed Defendant and/or another individual as her attorneys-in-fact. (Exhibit C at 1.) In paragraph 12 of Article III of the Power of Attorney, Ms. Morgan specified that "[i]f at any time more than one person is authorized to act as attorney-in-fact or co attorneys-in-fact for me under this Power of Attorney, any powers granted to my attorney-in-fact or co attorneys-in-fact under this instrument may be exercised by any one of them, separately and without the necessity of obtaining the consent or written joinder of any other attorney-in-fact or co attorney-in-fact." (Exhibit C at 16.)

8. In Article I, entitled "**SPECIFIC POWERS GRANTED,**" the Power of Attorney enumerates a list of power and authorities that Ms. Morgan conferred upon her attorneys-in-fact, including as stated in paragraph 9: "**Contracts.** To enter into any contracts of whatever nature or kind in my name." (Exhibit C at 4.) In paragraph 38 of Article I, Ms. Morgan further conferred upon Defendant "full power and authority to do, take, and perform all and every act and thing whatsoever requisite, proper, necessary, or desirable to be done, in the exercise of any of the rights and powers herein granted, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that said attorney-in-fact, or his or her substitute or substitutes, shall lawfully do or cause to be done by virtue of the Power of Attorney and that rights and powers herein granted." (Exhibit C at 12-13.)

9. Paragraph 2 of Article III of the Power of Attorney provides: "This instrument is to be construed and interpreted as a General Durable Power of Attorney under N.C.G.S. 32A-1 et seq. The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my attorney-in-fact." (Exhibit C at 14.)

10. In paragraph 5 of Article III, the Power of Attorney provides that "[a]ny party dealing with my attorney-in-fact hereunder may rely absolutely on the authority granted herein and need not look to the application of any proceedings nor the authority of my attorney-in-fact as to any action taken hereunder." (Exhibit C at 14.)

11. The Power of Attorney became effective when Ms. Morgan executed it on April 16, 2010. (*See* Exhibit C at 14, Art. III ¶ 4; *see also id.* at 16 (signature page).)

B. **Dispute Resolution Program—Arbitration Agreement**

1. **General Provisions**

12. The DRP is an easy-to-read, stand-alone document, which Defendant was alerted on the first page to "**PLEASE READ CAREFULLY**," and which Defendant signed on Ms. Morgan's behalf. (Exhibit B at 7 (emphasis in original).) The DRP delineates a three-step process for resolving disputes agreed upon by the parties, with the goal of "enhanc[ing] the quality of care that is provided to our residents, and to resolve any disagreements about care and other services that we provide and that may arise." (Exhibit B at 1.) The DRP further explains that it "is valuable to all parties because it offers a streamlined process to settle disagreements. DRP increases the likelihood that disagreements can be resolved more quickly and less expensively than by litigation and that residents themselves will actually benefit from faster resolution of disagreements. Participation in DRP also helps to reduce the costs of health care for everyone." (Exhibit B at 1.)

13. On the first page, the DRP provides that

**THIS AGREEMENT IS SUBJECT TO ARBITRATION [OF] DISPUTES.**

**BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPTE RESOVLED THROUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR.**

- 4 -
Case 5:11-cv-00184-RLV-DSC   Document 1   Filed 12/22/11   Page 4 of 15

(Exhibit B at 1 (emphasis in original).)  The DRP contains a similar disclaimer at page six (immediately preceding the signature pages) that concludes by stating that "**THE ARBITRATOR'S DECISION IS FINAL AND BINDING, AND CANNOT BE APPEALED TO ANY STATE OR FEDERAL COURT, UNLESS PROVIDED FOR [BY] STATE OR FEDERAL LAW**."  (Exhibit B at 6 (emphasis in original).)

14.     Under the DRP, the "**Parties**" to the agreement include Ms. Morgan, "any and all family members who would have a right to bring a claim in state court on behalf of [Ms. Morgan] or [her] estate, a legal representative . . . or any other person that may have a cause of action arising out of or relating in any way to [Ms. Morgan's] stay at the [F]acility and [] [Statesville], any parent or subsidiary of the [F]acility, any company affiliated with the [F]acility, or any of the [F]acility's officers, directors, managers, employees, or agents acting in such capacity . . . ."  (Exhibit B at 2.)

15.     The DRP imposes mutual rights and obligations on the parties.  The DRP defines "**Disputes**" that are covered by the agreement to mean "any claim or dispute totaling $50,000.00 individually or in the aggregate that would constitute a cause of action that either party could bring in a court of law[.]"  (Exhibit B at 2.)  The DRP makes clear that "this agreement does not prevent either party from initiating a grievance proceeding, complaint to survey agencies, appeal proceedings with the appropriate state or federal entity regarding an involuntary transfer or discharge, or any such claim or dispute involving solely a monetary claim in an amount less than $50,000.00.  Any such claim shall not be deemed a dispute under this agreement."  (Exhibit B at 2-3.)

16. The DRP made plain to Defendant that "YOUR PARTICIPATION IN DRP IS VOLUNTARY." (Exhibit B at 1 (emphasis in original).) It further provides that "THIS AGREEMENT MAY BE REVOKED BY SENDING A WRITTEN NOTICE OF REVOCATION WITHIN THIRTY (30) DAYS FROM THE DATE OF ADMISSION OR THE DATE ON WHICH THIS AGREEMENT IS SIGNED, WHICHEVER OCCURES LATER. A DECISION TO REVOKE THIS AGREEMENT WILL IN NO WAY ADVERSELY AFFECT THE RESIDENT'S STATUS AT THE FACILITY. WE WILL NOT REFUSE TO ADMIT, ATTEMPT TO DISCHARGE [Ms. Morgan] OR TAKE ANY OTHER ADVERSE ACTION AGAINST [Ms. Morgan] BASED ON A REVOCATION OF THE OPPORTUNITY TO PARTICIPATE IN DRP." (Exhibit B at 1 (emphasis in original).)

17. The DRP also notified Defendant that "YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO CONUSLT WITH AN ATTORNEY OF YOUR CHOICE" (Exhibit B at 1 (emphasis in original)), and Defendant acknowledged on Ms. Morgan's behalf that "THE TERMS [OF THE DRP] HAVE BEEN EXPLAINED TO YOU AND YOUR REPRESENTATIVE, BY OUR AGENT, AND THAT YOU OR YOUR REPRESENTATIVE HAVE HAD THE OPPORTUNITY TO ASK QUESTIONS ABOUT THIS AGREEMENT AND THE DISPUTE RESOLUTION PROGRAM," (*id.* at 2 (emphasis in original)). The DRP further makes plain that:

> YOU AGREE THAT YOUR PARTICIPATION IN THE DRP WILL BENEFIT AND ***BIND YOUR FAMILY, HEIRS, SUCCESSORS, ASSIGNS, INSURERS, TRUSTEES, AND/OR YOUR LEGAL REPRESENTATIVES, INCLUDING THE PERSONAL REPRESENTATIVE OR EXECUTOR OF YOUR ESTATE***; AND HIS/HER SUCCESSORS, ASSIGNS, AGENTS[,] INSURERS, TRUSTEES AND REPRESENTATIVES. ***BY AGREEING TO PARTICIPATE ALL DISAGREEMENTS MUST BE RESOLVED THROUGH THE DISPUTE***

*RESOLUTION PROGRAM*.  LIKEWISE, THE FACILITY AND ALL OF ITS PARENTS, AFFILIATE, SUBSIDIARY COMPANIES['] OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, AGENTS, INSURERS AND REPRESENTATIVES WILL BE REQUIRED TO RESOLVE DISAGREEMENTS PURSUANT TO THIS PROGRAM.

(Exhibit B at 2 (all-caps in original; bold and italics added).)

### 2. Description of Three-Step DRP Process

18. The first step of the DRP is "**NOTICE OF THE DISAGREEMENT**." (Exhibit B at 3 (emphasis in original).) The DRP explains that "[i]f a party to this Agreement has a disagreement with the other party, the party with the disagreement must notify the Administrator, in writing, regarding the specific nature of the dispute." Thereafter, the Facility Administrator must forward the Notice to a DRP Review Committee within five days of receipt. (*See id.*) The DRP Review Committee includes the Regional Vice President of Operations, the Regional Clinical Director, the District Human Resources Representative, and the Risk Services Coordinator. "Within fourteen (14) days of receiving [a] written Notice of Dispute[,] the Committee [] will review the details of the Notice and inform the parties in writing of the Review Committee's decision." (Exhibit B at 3.)

19. If the dispute is not resolved by the DRP Review Committee, either party may proceed to step two of the DRP, which is "**MEDIATION BY A THIRD PARTY**." (Exhibit B at 3 (emphasis in original).) Either party may "request mediation in writing within thirty (30) days of the DRP Review Committee's decision, or, in the event the DRP [Review] Committee fails to render a decision, within forty-four (44) days of receiving the Written Notice of a Dispute." (Exhibit B at 3.) "Written requests [for mediation] must be submitted to the [F]acility administrator within the applicable limitations period provided by law for the dispute." (Exhibit B at 3.) The DRP provides that "[u]nder no circumstances will mediation be a condition precedent to arbitration." (Exhibit B at 3.)

20. The third and final step of the DRP is "**ARBITRATION**." This stage of the process may be invoked by either party "[i]f a satisfactory resolution of the disagreement cannot be reached within sixty (60) days of a request for mediation." Alternatively, "either party may request arbitration in writing within thirty (30) days of the conclusion of mediation." (Exhibit B at 3.) As with mediation, "[a] written demand for Arbitration must be submitted to the [F]acility administrator within the applicable limitations period provided by law for the dispute." (Exhibit B at 3.) The DRP explains that "[u]nlike Mediation, the arbitrator's decision is final, and the parties are required to follow the arbitrator's decision." (Exhibit B at 3.)

21. The DRP provides that "[t]he mediation and arbitration of all disagreements under DRP must be settled by the rules and procedures of the National Arbitration Forum ('NAF') or the Judicial Arbitration and Mediation Service ('JAMS')." (Exhibit B at 4.) The parties may use a single arbitrator or, if they cannot agree on an arbitrator to decide the dispute, they each may choose a single arbitrator and the two appointed arbitrators shall appoint a third arbitrator using the applicable rules and procedures. (Exhibit B at 4.) The DRP states that the parties also "may agree to use a local arbitrator(s) in accordance with the process described above using the JAMS' rules and procedures or such other rules and procedures as the parties may agree to use." (Exhibit B at 4.)

22. The DRP provides that "[a]ny party may bring an action in any proper court to require arbitration under this Agreement . . . ." (Exhibit B at 5.) The DRP also states that if a party "files a lawsuit in connection with a disagreement instead of participating in DRP, the other party does not lose its right to mediation or arbitration if a demand to enforce DRP is served on the other party before the first day of a judge or jury trial." (Exhibit B at 6.) By service of this Complaint on Defendant, Plaintiff hereby demands arbitration pursuant to the DRP.

23. The DRP states that "the Facility will pay for ninety percent (90%) of the fees for mediation and arbitration and [the resident] will pay for the remaining ten percent (10%)." (Exhibit B at 4.)

24. The parties expressly acknowledged that the "DRP and the nature and extent of [Statesville's] business activities substantially affects, relates, and involves the purchase of substantial quantities of goods and services that are produced outside of [North Carolina] and shipped across states lines to the Facility, which is referred to as interstate commerce. As such, the Federal Arbitration Act ('FAA'), not state law, will control and applies to the arbitration of disagreements between the parties and the parties agree to incorporate such laws into this Agreement." (Exhibit B at 5.)

### C. Admission Contract

25. The Admission Contract specifically identified Ms. Morgan as the "Resident" to be admitted to the Facility and "sets forth the terms under which the Facility will provide long term care health services to [Ms. Morgan] and how [she] will pay for such services." (Exhibit A at 1, § I.) The Admission Contract recites that it is between the Facility, Dorothy Morgan, and William Morgan who is designated as the "Responsible Party" for Ms. Morgan. (*See id.*) The Contract further specifies that "whenever the term Resident is used, it refers to the Resident and anyone with legal authority to make decisions on the Resident's behalf"—*i.e.,* in this case, Defendant. (*Id.*)

26. The second paragraph of Section VII of the Admission Contract reads: "**Entirety of Agreement.** This Agreement, *including . . . the Arbitration Agreement between the Facility and the Resident, if the parties sign one*, supersede all other agreements, either oral or in writing, between the parties, and contain all of the promises and agreements between the parties." (Exhi-

bit A at 9, § VII (emphasis added).)  Although Ms. Morgan, through Defendant as her attorney-in-fact, was not required to agree to the DRP, or the Arbitration Agreement contained therein, as a precondition to her admission and treatment at Statesville, after Defendant agreed on Ms. Morgan's behalf to arbitrate disputes by executing the DRP, the DRP became part of the Admission Contract.  From that point on, Ms. Morgan's (and Defendant's) agreement to abide by the DRP and arbitrate disputes covered by the agreement *was* a mandatory contract term.

27. Defendant provided the Facility with the Power of Attorney in which Ms. Morgan had granted him unrestricted authority to act as her attorney-in-fact, as described above.  Pursuant to the Power of Attorney itself, Plaintiff had an absolute right to rely on the actual and apparent authority that Ms. Morgan conferred upon Defendant in permitting Defendant to sign the admission paperwork for her.  (*See* Exhibit C at 14, Art. III ¶ 5.)

28. Upon information and belief, Ms. Morgan resided at the Facility from January 6, 2011, to January 26, 2011.

29. Upon information and belief, Ms. Morgan died on January 27, 2011, and Defendant later was appointed as executor of Ms. Morgan's estate.

30. On September 9, 2011, Defendant filed a civil action in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, *Morgan v. Fred Marks, M.D., et al.*, 11-CVS-02737 ("State Court Action").  A true and correct copy of Defendant's Complaint is attached hereto as **Exhibit D**.  In the State Court Action, Defendant alleges claims for wrongful death (Count IV) and negligence per se (Count V) against Plaintiff which are directly related to care and treatment that Ms. Morgan received at Statesville.  (*See* Exhibit D ¶¶ 80-93.)

## CAUSE OF ACTION TO COMPEL ARBITRATION
### (Federal Arbitration Act, 9 U.S.C. § 4)

31. Plaintiff incorporates by reference all of the allegations above, as if they were set forth fully herein.

32. The Federal Arbitration Act ("FAA") mandates arbitration of claims that are subject to a written arbitration agreement and that affect interstate commerce. Specifically, the FAA requires arbitration where (a) there is a valid, written arbitration agreement, and (b) a dispute is within the scope of the agreement. Section 2 of the FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Section 4 of the FAA further provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

33. In court actions subject to written arbitration agreements, the FAA requires that such actions be stayed pending resolution of the arbitration process:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

34.     Pursuant to the Power of Attorney, Defendant signed the DRP containing the Arbitration Agreement on behalf of Ms. Morgan. The Power of Attorney gave Defendant unrestricted authority to act as Ms. Morgan's agent, including "[t]o enter into any contracts of whatever nature or kind in [Ms. Morgan's] name." (Exhibit C at 4.) The Power of Attorney thus authorized Defendant to execute the DRP containing the Arbitration Agreement. Accordingly, Ms. Morgan was bound by the Arbitration Agreement, as is Defendant who "stands in the shoes" of Ms. Morgan as the executor of her estate. In the DRP, the parties also expressly agreed that it would "BIND [MS. MORGAN'S] FAMILY, HEIRS, SUCCESSORS . . . AND/OR [HER] LEGAL REPRESENTATIVES, *INCLUDING THE PERSONAL REPRESENTATIVE OR EXECUTOR OF [HER] ESTATE*." (Exhibit B at 2 (all-caps in original; bold and italics added); *see also id.* at 2 (defining "**Parties**" to include "all family members who would have a right to bring a claim in state court on behalf of [Ms. Morgan] or [her] estate.")) This unambiguous text plainly covers the estate claims that Defendant has asserted against Plaintiff in the State Court Action.

35.     In addition to being a party to the DRP in her own right, Ms. Morgan was a third-party beneficiary of the DRP between Defendant and Statesville. As the executor of Ms. Morgan's estate, Defendant stands in the shoes of Ms. Morgan insofar as she was a party to, and legally obligated to comply with, the DRP, including the Arbitration Agreement contained therein. Indeed, the Admission Contract expressly reflects that it incorporates the DRP's Arbitration Agreement. (Exhibit A at 9, § VII.) Thus, Ms. Morgan's (and Defendant's) compliance with the DRP and its Arbitration Agreement, became a mandatory term of the Admission Contract. As a third-party beneficiary of the Admission Contract containing the Arbitration Agreement, Defendant is thus bound to resolve "ALL DISAGREEMENTS" with Plaintiff, including any "cause of

action arising out of or relating in any way to [Ms. Morgan's] stay at the [F]acility." (Exhibit B at 2.)

36. Defendant also is precluded from repudiating the Arbitration Agreement in the DRP under the doctrine of equitable estoppel. The Admission Contract incorporates the Arbitration Agreement of the DRP and makes it part of the operating documents that controlled Ms. Morgan's residency. Ms. Morgan resided at the Facility and received the benefits of the care and treatment that Statesville provided. Having accepted the benefits of the Admission Contract, Ms. Morgan (and Defendant, who stands in her shoes) may not refuse to comply with the Arbitration Agreement of the DRP.

37. Defendant's causes of action against Plaintiff in the State Court Action are within the scope of, and subject to, the DRP, including the Arbitration Agreement contained therein. The DRP bars the assertion of these claims in any civil action and, instead, requires that they be resolved by arbitration. Defendant's filing of the State Court Action against Plaintiff is thus in direct violation of the DRP and its Arbitration Agreement.

38. The Admission Contract constitutes a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, and the parties acknowledge as much in the DRP itself, which became a part of the Admission Contract after Defendant signed it. (*See* Exhibit B at 5.) Among other things, Ms. Morgan was a Medicare patient, like other residents at Statesville. Medicare paid a portion of the costs of Ms. Morgan's care, and the care of other residents, while she lived at the Facility. In addition, Statesville was certified to, and did, receive payment from the North Carolina Medicaid program, a substantial portion of which is funded by the Federal government. (Exhibit A at 7-8, § VI.) Statesville also purchased equipment, goods and services from vendors in other States that were used for the treatment and care of Ms. Mor-

gan and other residents. These activities, in the aggregate, affect and involve interstate commerce, thus subjecting the Arbitration Agreement to the FAA. Moreover, the parties expressly agreed that the FAA "will control and applies to the arbitration of disagreements between the parties and the parties agree[d] to incorporate [the FAA] into th[e] [Arbitration Agreement]." (Exhibit B at 5.)

39. Therefore, pursuant to the DRP's Arbitration Agreement, FAA, and applicable law, Plaintiff is entitled to an order compelling Defendant to submit his claims to arbitration and staying the State Court Action.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff is entitled to, prays for, and demands a judgment:

A. Ordering Defendant to arbitrate his claims asserted against Plaintiff in the State Court Action, in accordance with the Arbitration Agreement;

B. Upon determining that the claims Defendant has asserted against Plaintiff in the State Court Action are subject to the Arbitration Agreement, staying the State Court Action from further proceedings pending a resolution of this matter through the arbitration process;

C. Staying further proceedings in the action *sub judice* pending a conclusion of arbitration of Defendant's claims against Plaintiff or, in the alternative, dismissing this matter without prejudice;

D. Entering an order enjoining Defendant from pursuing his claims against Plaintiff anywhere other than in an arbitral forum in accordance with the Arbitration Agreement; and

E. Ordering such other relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED, this the 22nd day of December, the year 2011.

        SSC STATESVILLE MAPLE LEAF OPERATING COMPANY LLC

        BY:    WILKINS TIPTON, P.A.

                */s/ Bradley K. Overcash*
                BRADLEY K. OVERCASH
                N.C. Bar No.: 36978

OF COUNSEL:

WILKINS TIPTON, P.A.
South Tyron Square
201 South Tryon Street, Suite 1475
Charlotte, North Carolina 28202 -3212
Phone: 704-676-6066
Fax: 704-676-6068
*Attorneys for Plaintiff SSC Statesville Operating Company LLC*

- 15 -
Case 5:11-cv-00184-RLV-DSC   Document 1   Filed 12/22/11   Page 15 of 15