# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

SSC STATESVILLE MAPLE LEAF　　　　)
OPERATING COMPANY LLC,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiff,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Civil Action No. 5:11-cv-00184
　　　　　　　　　　　　　　　　　　)
WILLIAM P. MORGAN, JR.,　　　　　　)
Administrator of the Estate of DOROTHY　)
MAE LAW MORGAN, deceased,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendant.　　　)
　　　　　　　　　　　　　　　　　　)
_____)

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION TO COMPEL ARBITRATION

EXHIBIT
"A"

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

    A.    Power of Attorney ..........................................................................................2

    B.    Dispute Resolution Program/Arbitration Agreement ...............................3

        1.    General Provisions .............................................................................3
        2.    Three-Step DRP Process ...................................................................6

    C.    Admission Contract .......................................................................................8

    D.    State Court Action..........................................................................................9

ARGUMENT ...................................................................................................................9

I.     THE FEDERAL ARBITRATION ACT GOVERNS THIS CASE....................................9

II.    THE FAA MANDATES ARBITRATION OF DEFENDANT'S CLAIMS IN
     ACCORDANCE WITH THE ARBITRATION AGREEMENT ......................................10

    A.    The Arbitration Agreement Is Valid And Enforceable...........................11

        1.    The Power of Attorney Authorized Defendant To Bind Ms.
            Morgan To the Arbitration Agreement.....................................11
        2.    Ms. Morgan Was Bound To Arbitrate as a Third-Party Beneficiary.........14
        3.    Defendant Must Arbitrate Pursuant to Equitable Estoppel........................16

    B.    Defendant's Claims Are within the Scope of the Arbitration Agreement............17

    C.    Numerous Courts Have Enforced Arbitration Agreements Involving
        Nursing Home Care .......................................................................................18

III.   THE FAA'S INTERSTATE COMMERCE REQUIREMENT IS SATISFIED...............19

IV.   FEDERAL AND STATE COURT PROCEEDINGS MUST BE STAYED ...................22

CONCLUSION................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
   513 U.S. 265 (1995)....................................................................................14, 20

*Alterra Healthcare Corp. v. Bryant,*
   937 So. 2d 263 (Fla. Dist. Ct App. 2006) ....................................................19

*Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham,*
   953 So. 2d 574 (Fla. Ct. App. 2007) (per curiam) ................................15, 16

*AT&T Mobility, LLC v. Concepcion,*
   131 S. Ct. 1740 (2011)..................................................................................10

*Barron v. The Evangelical Lutheran Good Samaritan Soc'y,*
   --- P.3d ---, No. 29,707, 2011 WL 4809827 (N.M. Ct. App. May 31, 2011) ...................13, 19

*Bergman v. SSC Monroe Operating Company LLC,*
   Civil Action No. 3:11-494 (W.D.N.C. Dec. 16, 2011) .............................1

*Blimpie Int'l, Inc. v. Butterworth,*
   No. 1:05-CV-0131-JDT-WTL, 2005 WL 756218 (S.D. Ind. Mar. 9, 2005) .........................23

*Briarcliff Nursing Home, Inc. v. Turcotte,*
   894 So.2d 661 (Ala. 2004) (per curiam) ......................................................19

*Canyon Sudar Partners, LLC v. Cole ex rel. Haynie,*
   Civil Action No. 3:10-1001, 2011 WL 1233320
   (S.D. W.Va. Mar. 29, 2011).....................................................1, 12, 18, 19, 22

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003) (per curiam) ..................................................................20

*Comanche Indian Tribe of Okla. v. 49, LLC,*
   391 F.3d 1129 (10th Cir. 2004) ...................................................................20

*Cook v. GGNSC Riply, LLC,*
   786 F. Supp. 2d 1166 (N.D. Miss. 2011).................................................15, 19

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985)..................................................................................10, 11

*Doctor's Assocs., Inc. v. Casarotto,*
   517 U.S. 681 (1996)......................................................................................14

*Hanson v. Valley View Nursing & Rehab. Ctr.*,
    No. 23001, 2006 WL 2060575 (Ohio Ct. App. July 26, 2006) .............................................19

*Hogan v. County Villa Health Serv.*,
    148 Cal. App. 4th 259 (Cal. Ct. App. 2007) ..........................................................................19

*Hooters of Am., Inc. v. Phillips*,
    173 F.3d 933 (4th Cir. 1999) ................................................................................................11

*In re Nexion Health at Humble, Inc.*,
    173 S.W.3d 67 (Tex. 2005) (per curiam) ..............................................................................22

*International Paper v. Schwabedissen Maschinen & Anlagen GMBH*,
    206 F.3d 411 (4th Cir. 2000) ..........................................................................................16, 17

*JP Morgan Chase & Co. v. Conegie*,
    492 F.3d 596 (5th Cir. 2007) ................................................................................................15

*Katzenbach v. McClung*
    379 U.S. 294 (1964).............................................................................................................21

*LSB Fin. Servs., Inc. v. Harrison*,
    144 N.C. App. 542, 548 S.E.2d 574 (N.C. Ct. App. 2001)............................14, 15, 16, 17

*McGuffey Health & Rehab. Ctr. v. Gibson*,
    864 So. 2d 1061 (Ala. 2003).................................................................................................22

*McGuire, Cornwell, & Blakey v. Grider*,
    765 F. Supp. 1048 (D. Colo. 1991).......................................................................................23

*Miller v. Cotter*,
    863 N.E.2d 537 (Mass. 2007) ........................................................................................19, 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).............................................................................................................10

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...........................................................................................................10, 18

*Northport Health Servs. Of Ark., LLC v. Rutherford*,
    605 F.3d 483 (8th Cir. 2010) ...........................................................................................18, 19

*Owens v. Coosa Valley Health Care, Inc.*,
    890 So. 2d 983 (Ala. 2004)...........................................................................................16, 19, 22

*Owens v. National Health Corp.*,
    263 S.W.3d 876 (Tenn. 2007)..............................................................................................12

*Perry v. Thomas,*
    482 U.S. 483 (1987) ........................................................................14, 20

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) ..............................................................................20

*Raper v. Oliver House, LLC,*
    637 S.E.2d 551 (N.C. Ct. App. 2006) ....................................................19

*Sanford v. Castleton Healthcare Ctr., LLC,*
    813 N.E.2d 411 (Ind. Ct. App. 2006) .....................................................19

*Scherk v. Alberto-Cuyler Co.,*
    417 U.S. 506 (1974) ..............................................................................10

*Sovereign Healthcare of Tampa, LLC v. Huerta,*
    14 So. 3d 1033 (Fla. Dist. Ct. App. 2009) ..............................................12

*Summit Health, Ltd. v. Pinhas,*
    500 U.S. 322 (1991) ..........................................................................21, 22

*THI of S.C. at Columbia, LLC v. Wiggins,*
    C/A No. 3:11-888-CMC, 2011 WL 4089435 (D.S.C. Sept. 13, 2011) ..........................passim

*Thompson v. THI of New Mexico at Casa Arena Blanca, LLC,*
    No. CIV 05-1331 JB/LCS, 2006 WL 4061187 (D.N.M. Sept. 12, 2006) ................19

*Triad Health Mgt. of Ga. III, LLC v. Johnson,*
    679 S.E.2d 785 (Ga. Ct. App. 2009) ......................................................12

*Trinity Mission Health & Rehabilitation of Clinton v. Estate of Scott ex rel. Johnson,*
    19 So.3d 735 (Miss. Ct. App. 2008) .......................................................15

*Volt Informational Serv., Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,*
    489 U.S. 468 (1989) ..............................................................................10

*Wilkerson v. Nelson,*
    395 F. Supp. 2d 281 (M.D.N.C. 2005) ...............................12, 13, 18, 20

## STATUTES

9 U.S.C. § 2 ..............................................................................................passim

9 U.S.C. § 3 ....................................................................................................23

All Writs Act, 28 U.S.C. § 1651 ......................................................................23

Anti-Injunction Act, 28 U.S.C. § 2283 ............................................................22

iv

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA")............................................................ passim

N. C. GEN. STAT. § 32A-1 *et seq*..................................................................................3

Case 5:11-cv-00184-RLV-DSC   Document 5-1   Filed 06/01/12   Page 6 of 35

Plaintiff SSC Statesville Maple Leaf Operating Company LLC ("Statesville" or "Facility"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Compel Arbitration ("Motion"), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

## INTRODUCTION

Plaintiff seeks an order compelling Defendant William P. Morgan, Jr. to arbitrate claims that he has asserted against Plaintiff in North Carolina state court. Defendant has refused to abide by a valid and enforceable arbitration agreement that he signed on behalf of his mother, decedent Dorothy Mae Law Morgan, as her attorney-in-fact under a written power of attorney, when he admitted her to the Statesville nursing facility in Statesville, North Carolina. Instead, Defendant sued Plaintiff in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, *Morgan v. Fred Marks*, 11-CVS-02737 ("State Court Action"), asserting claims against Plaintiff that are within the scope of the arbitration agreement.

As explained below, the arbitration agreement is binding on Defendant, thus requiring him to arbitrate his claims against Plaintiff rather than litigate in court. On December 16, 2011, this Court considered and enforced the same arbitration agreement in a nursing home case involving a fact-pattern closely akin to this one in *Bergman v. SSC Monroe Operating Co., LLC*, Case No. 3:11-cv-494 (W.D.N.C. Dec. 16, 2011). Also, under similar circumstances, the United States District Court for the Southern District of West Virginia already has held that a nearly identical arbitration agreement was enforceable in *Canyon Sudar Partners, LLC v. Cole ex rel. Haynie*, Civil Action No. 3:10-1001, 2011 WL 1233320 (S.D. W.Va. Mar. 29, 2011). This Court should enforce the arbitration agreement in this case as well. Accordingly, Plaintiff's

Motion should be granted. Plaintiff also asks for a stay of proceedings here and in the State Court Action after this Court determines that arbitration is required.

## FACTUAL BACKGROUND

On January 5, 2011, Defendant, pursuant to a general Power of Attorney ("POA"), executed a "Resident Admission and Financial Agreement" ("Admission Contract" or "A.C.") to obtain care for Ms. Morgan at Statesville. Also pursuant to the Power of Attorney, Defendant signed an optional "Agreement for Dispute Resolution Program" ("DRP"), which contains an arbitration agreement ("Arbitration Agreement").[1]

### A.     Power of Attorney

Pursuant to the Power of Attorney,[2] Ms. Morgan appointed Defendant and/or another individual as her attorneys-in-fact. (POA at 1.) In paragraph 12 of Article III of the Power of Attorney, Ms. Morgan specified that "[i]f at any time more than one person is authorized to act as attorney-in-fact or co attorneys-in-fact for me under this Power of Attorney, any powers granted to my attorney-in-fact or co attorneys-in-fact under this instrument may be exercised by any one of them, separately and without the necessity of obtaining the consent or written joinder of any other attorney-in-fact or co attorney-in-fact." (*Id.* at 16.)

In Article I, entitled "**SPECIFIC POWERS GRANTED,**" the Power of Attorney enumerates a list of powers that Ms. Morgan conferred upon Defendant, including the authority "[t]o enter into any contracts of whatever nature or kind in my name." (POA at 4, Art. I ¶ 9.)) In

---

[1] The Admission Contract is **Exhibit A** to Plaintiff's Complaint To Compel Arbitration. The DRP and Power of Attorney are **Exhibits B and C**, respectively, to Plaintiff's Complaint. Defendant's complaint in the State Court Action is **Exhibit D** to Plaintiff's Complaint.

[2] When Ms. Morgan was admitted to Statesville, Defendant also tendered an April 16, 2010 Health Care Power of Attorney in which Ms. Morgan appointed Defendant as her health care attorney-in-fact. A copy of the Health Care Power of Attorney is **Attachment 1** hereto.

2

paragraph 38 of Article I, Ms. Morgan also gave Defendant "full power and authority to do, take, and perform all and every act and thing whatsoever requisite, proper, necessary, or desirable to be done, in the exercise of any of the rights and powers herein granted, as fully to all intents and purposes as I might or could do if personally present . . . ." (*Id.* at 12-13.)

Paragraph 2 of Article III of the Power of Attorney provides that "[t]his instrument is to be construed and interpreted as a General Durable Power of Attorney under N.C. GEN. STAT. § 32A-1 *et seq.* The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my attorney-in-fact." (POA at 14.) Also in the Power of Attorney, Ms. Morgan made clear that "[a]ny party dealing with my attorney-in-fact hereunder may rely absolutely on the authority granted herein and need not look to the application of any proceedings nor the authority of my attorney-in-fact as to any action taken hereunder." (*Id.* at 14.) The Power of Attorney became effective when Ms. Morgan executed it on April 16, 2010. (*See id.* at 14, Art. III ¶ 4; *see also id.* at 16 (signature page).)

**B.      Dispute Resolution Program/Arbitration Agreement**

**1.      General Provisions**

The DRP is an easy-to-read, stand-alone document, which Defendant was alerted on the first page to "**PLEASE READ CAREFULLY,**" and which Defendant signed on Ms. Morgan's behalf. (DRP at 7.) The DRP delineates a three-step process for resolving disputes between residents and the Facility, with the goal of "enhanc[ing] the quality of care that is provided to [Statesville's] residents, and to resolve any disagreements about care and other services that [the Facility] provide[s] and that may arise." (*Id.* at 1.) The DRP explains that it "is valuable to all parties because it offers a streamlined process to settle disagreements. DRP increases the likelihood that disagreements can be resolved more quickly and less expensively than by litigation and that residents themselves will actually benefit from faster resolution of

disagreements. Participation in DRP also helps to reduce the costs of health care for everyone."

(*Id.* at 1.)

> The DRP expressly provides that:
>
> YOU AGREE THAT YOUR PARTICIPATION IN THE DRP WILL BENEFIT AND ***BIND YOUR FAMILY, HEIRS, SUCCESSORS, ASSIGNS, INSURERS, TRUSTEES, AND/OR YOUR LEGAL REPRESENTATIVES, INCLUDING THE PERSONAL REPRESENTATIVE OR EXECUTOR OF YOUR ESTATE***; AND HIS/HER SUCCESSORS, ASSIGNS, AGENTS[,] INSURERS, TRUSTEES AND REPRESENTATIVES. ***BY AGREEING TO PARTICIPATE ALL DISAGREEMENTS MUST BE RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM***. LIKEWISE, THE FACILITY AND ALL OF ITS PARENTS, AFFILIATE, SUBSIDIARY COMPANIES OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS, ASSIGNS, AGENTS, INSURERS AND REPRESENTATIVES WILL BE REQUIRED TO RESOLVE DISAGREEMENTS PURSUANT TO THIS PROGRAM.

(*Id.* at 2 (all-caps in original; bold and italics added).)  The DRP also provides:

> **THIS AGREEMENT IS SUBJECT TO ARBITRATION [OF] DISPUTES.**
>
> **BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND TO HAVE THE DISPUTE RESOLVED THROUGH VARIOUS STEPS, CULMINATING IN A DECISION BY AN ARBITRATOR.**

(*Id.* at 1 (all-caps and bold in original).)  The DRP also warns that "**THE ARBITRATOR'S DECISION IS FINAL AND BINDING, AND CANNOT BE APPEALED TO ANY STATE OR FEDERAL COURT, UNLESS PROVIDED FOR [BY] STATE OR FEDERAL LAW.**"

(*Id.* at 6 (all-caps and bold in original).)

The parties to the DRP are **[1]** Ms. Morgan, "any and all family members who would have a right to bring a claim in state court on behalf of [Ms. Morgan] or [her] estate, a legal representative . . . or any other person that may have a cause of action arising out of or relating in any way to [Ms. Morgan's] stay at the [F]acility and, **[2]** [Statesville], any parent or subsidiary of the [F]acility, any company affiliated with the [F]acility, or any of the [F]acility's officers,

4

directors, managers, employees, or agents acting in such capacity . . . ." (DRP at 2 (numbered brackets added).)

The DRP imposes mutual rights and obligations on the parties. "Disputes" that are covered by the program (*i.e.*, that must be arbitrated) means "any claim or dispute totaling $50,000.00 individually or in the aggregate that would constitute a cause of action that either party could bring in a court of law[.]" (DRP at 2.) The DRP makes clear that "this agreement does not prevent either party from initiating a grievance proceeding, complaint to survey agencies, appeal proceedings with the appropriate state or federal entity regarding an involuntary transfer or discharge, or any such claim or dispute involving solely a monetary claim in an amount less than $50,000.00. Any such claim shall not be deemed a dispute under this agreement." (*Id.* at 2-3.)

The DRP expressly states that Defendant was not required to sign it as a condition of Ms. Morgan's admission to Statesville: "YOUR PARTICIPATION IN DRP IS VOLUNTARY." (DRP at 1 (all-caps in original).) The DRP also made clear to Defendant that "THIS AGREEMENT MAY BE REVOKED BY SENDING A WRITTEN NOTICE OF REVOCATION WITHIN THIRTY (30) DAYS FROM THE DATE OF ADMISSION OR THE DATE ON WHICH THIS AGREEMENT IS SIGNED, WHICHEVER OCCURS LATER. A DECISION TO REVOKE THIS AGREEMENT WILL IN NO WAY ADVERSELY AFFECT THE RESIDENT'S STATUS AT THE FACILITY. WE WILL NOT REFUSE TO ADMIT, ATTEMPT TO DISCHARGE [Ms. Morgan] OR TAKE ANY OTHER ADVERSE ACTION AGAINST [Ms. Morgan] BASED ON A REVOCATION OF THE OPPORTUNITY TO PARTICIPATE IN DRP." (*Id.* at 1 (all-caps in original).)

The DRP also notified Defendant that "YOU HAVE THE RIGHT TO CONUSLT WITH AN ATTORNEY OF YOUR CHOICE," (DRP at 1 (all-caps in original)), and Defendant acknowledged on Ms. Morgan's behalf that "THE TERMS [OF THE DRP] HAVE BEEN EXPLAINED TO YOU AND YOUR REPRESENTATIVE, BY OUR AGENT, AND THAT YOU OR YOUR REPRESENTATIVE HAVE HAD THE OPPORTUNITY TO ASK QUESTIONS ABOUT THIS AGREEMENT AND THE DISPUTE RESOLUTION PROGRAM," (*id.* at 2 (all-caps in original).)

## 2. Three-Step DRP Process

The first step of the DRP is "**NOTICE OF THE DISAGREEMENT**." (DRP at 3 (emphasis in original).) The DRP explains that "[i]f a party to this Agreement has a disagreement with the other party, the party with the disagreement must notify the Administrator, in writing, regarding the specific nature of the dispute." Thereafter, the Facility Administrator must forward the Notice to a DRP Review Committee within five days of receipt. (*See id.*) The DRP Review Committee includes the Regional Vice President of Operations, the Regional Clinical Director, the District Human Resources Representative, and the Risk Services Coordinator. (*See id.*) "Within fourteen (14) days of receiving [a] written Notice of Dispute[,] the Committee [] will review the details of the Notice and inform the parties in writing of the Review Committee's decision." (*Id.*)

If the dispute is not resolved by the DRP Review Committee, either party may proceed to step two of the DRP, which is "**MEDIATION BY A THIRD PARTY**." (DRP at 3 (all-caps and bold in original).) Either party may "request mediation in writing within thirty (30) days of the DRP Review Committee's decision, or, in the event the DRP [Review] Committee fails to render a decision, within forty-four (44) days of receiving the [w]ritten Notice of a Dispute."

(*Id.*) "Written requests [for mediation] must be submitted to the [F]acility administrator within the applicable limitations period provided by law for the dispute." (*Id.*) The DRP provides that "[u]nder no circumstances will mediation be a condition precedent to arbitration." (*Id.*)

The third and final step of the DRP is "**ARBITRATION**." This stage of the process may be invoked by either party "[i]f a satisfactory resolution of the disagreement cannot be reached within sixty (60) days of a request for mediation." Alternatively, "either party may request arbitration in writing within thirty (30) days of the conclusion of mediation." (DRP at 3.) As with mediation, "[a] written demand for Arbitration must be submitted to the [F]acility administrator within the applicable limitations period provided by law for the dispute." (*Id.*) The DRP explains that "[u]nlike Mediation, the arbitrator's decision is final, and the parties are required to follow the arbitrator's decision." (*Id.*)

The DRP provides that "[t]he mediation and arbitration of all disagreements under DRP must be settled by the rules and procedures of the National Arbitration Forum ('NAF') or the Judicial Arbitration and Mediation Service ('JAMS')." (DRP at 4.) The parties may use a single arbitrator or, if they cannot agree on an arbitrator to decide the dispute, they each may choose a single arbitrator and the two appointed arbitrators shall appoint a third arbitrator using the applicable rules and procedures. (*See id.*) The DRP gives the parties wide latitude in their selection of rules to govern arbitration. The DRP states that "[t]he parties may agree to use a local arbitrator(s) in accordance with the process described above using the JAMS' rules and procedures *or such other rules and procedures as the parties may agree to use*." (*Id.* (emphasis added).)

The DRP also provides that "[a]ny party may bring an action in any proper court to require arbitration under this Agreement . . . ." (DRP at 5.) The DRP further states that if a party

7

"files a lawsuit in connection with a disagreement instead of participating in DRP, the other party does not lose its right to mediation or arbitration if a demand to enforce DRP is served on the other party before the first day of a judge or jury trial." (*Id.* at 6.)

Providing substantial consideration for the agreement, the DRP provides that "the Facility will pay for ninety percent (90%) of the fees for mediation and arbitration and [the resident] will pay for the remaining ten percent (10%)." (DRP at 4.) The parties expressly acknowledged that the "DRP and the nature and extent of [Statesville's] business activities substantially affects, relates, and involves the purchase of substantial quantities of goods and services that are produced outside of [North Carolina] and shipped across states lines to the Facility, which is referred to as interstate commerce. As such, the Federal Arbitration Act ('FAA'), not state law, will control and applies to the arbitration of disagreements between the parties and the parties agree to incorporate such laws into this Agreement." (*Id.* at 5.)

## C.     <u>Admission Contract</u>

The Admission Contract identifies Ms. Morgan as the "Resident" to be admitted to the Facility and "sets forth the terms under which the Facility will provide long term care health services to [her] . . . ." (A.C. at 1, § I.) The Admission Contract recites that it is between the Facility, Dorothy Morgan, and William Morgan who is designated as the "Responsible Party." (*See id.*) The Contract further specifies that "whenever the term Resident is used, it refers to the Resident *and anyone with legal authority to make decisions on the Resident's behalf*"—*i.e.,* in this case, Defendant. (*Id.* (emphasis added).) Thus, Defendant is a party to the Admission Contract and bound by its terms in his personal capacity.

The second paragraph of Section VII of the Admission Contract expressly reads: "**Entirety of Agreement.** This Agreement, *including . . . the Arbitration Agreement between the*

*Facility and the Resident, if the parties sign one*, supersede all other agreements, either oral or in writing, between the parties, and contain all of the promises and agreements between the parties." (A.C. at 9, § VII (emphasis added).)  Although Defendant did not have to agree to the DRP as a precondition to Ms. Morgan's admission to Statesville, once the Defendant signed the DRP (and the 30-day revocation period expired), it became part of the Admission Contract.

### D.      State Court Action

According to Defendant's Complaint ("Compl.") in the State Court Action, Ms. Morgan resided at Statesville from January 6, 2011 to January 26, 2011.  (Compl. ¶ 38.)  Ms. Morgan died on January 27, 2011.  (Compl. ¶ 55.)  Defendant contends that he later was appointed as the executor of Ms. Morgan's estate.  (Compl. ¶ 2.)  Defendant alleges two claims against Plaintiff, both sounding in wrongful death—*i.e.,* negligence and wrongful death (Count IV) and negligence *per se* (Count V).  Both causes of action are directly related to care and treatment that Ms. Morgan received at Statesville.  (Compl. ¶¶ 80-93; *see also id.* ¶¶ 22-56.)

### ARGUMENT

Defendant's claims against Plaintiff in the State Court Action are subject to the Arbitration Agreement which requires Defendant to submit his claims to arbitration rather than litigate in court.  Thus, Defendant's filing of the State Court Action violates the Arbitration Agreement.  Accordingly, Plaintiff's Motion should be granted.

### I.      THE FEDERAL ARBITRATION ACT GOVERNS THIS CASE

The FAA requires arbitration of claims that are subject to a written arbitration agreement:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid,

irrevocable, and enforceable, save upon such ground as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Moreover, the parties agreed that the FAA would control the arbitration of disputes under the DRP. (DRP at 5.) Thus, the FAA governs this case.

## II. THE FAA MANDATES ARBITRATION OF DEFENDANT'S CLAIMS IN ACCORDANCE WITH THE ARBITRATION AGREEMENT

The FAA mandates that an arbitration clause in a written contract that affects interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. The FAA embodies an "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The FAA requires courts to enforce arbitration agreements as written to prevent parties, like Defendant here, from avoiding their contractual obligations to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate . . .").

The FAA "overrule[s] the judiciary's longstanding refusal to enforce agreements to arbitrate," *Volt Informational Serv., Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474 (1989) (citation omitted), by placing them "upon the same footing as other contracts," *Scherk v. Alberto-Cuyler Co.*, 417 U.S. 506, 511 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)). *See also AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements."). The FAA leaves "no place for the exercise of discretion by a district

10

court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218.

The FAA requires arbitration where: (1) there is a valid and enforceable arbitration agreement, and (2) a dispute is within the scope of the agreement. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). Both criteria are satisfied here.

### A.   <u>The Arbitration Agreement Is Valid And Enforceable</u>

As explained below, the Arbitration Agreement is valid and enforceable on three separate and independent grounds. *First*, Defendant had authority to bind Ms. Morgan to the DRP pursuant to the Power of Attorney. *Second*, Ms. Morgan had a separate and independent duty to arbitrate because she was a third-party intended beneficiary of the Admission Contract which expressly incorporates the parties' agreement to arbitrate. *Finally*, Ms. Morgan was bound to the Arbitration Agreement pursuant to the equitable estoppel doctrine. Thus, Defendant, as the executor of Ms. Morgan's estate, is bound to arbitrate the estate's claims against Plaintiff in accordance with the Arbitration Agreement.

### 1.   <u>The Power of Attorney Authorized Defendant To Bind Ms. Morgan To the Arbitration Agreement</u>

*First*, pursuant to the Power of Attorney, Defendant signed the DRP containing the Arbitration Agreement, together with the Admission Contract and other documents to admit Ms. Morgan to Statesville. The Power of Attorney explicitly gave Defendant unrestricted authority "[t]o enter into any contracts of whatever nature or kind in [Ms. Morgan's] name." (POA at 4, Art. I ¶ 9.) As further evidence of the sweeping breadth of authority that Ms. Morgan conferred upon Defendant, the Power of Attorney accords him "full power and authority to do, take, and perform all and every act and thing whatsoever requisite, proper, necessary, or desirable to be done, in the exercise of any of the rights and powers herein granted, as fully to all intents and

11

purposes as [Ms. Morgan] might or could do if personally present . . . ." (*Id.* at 12-13, Art. I ¶ 38.) There is no question that this omnibus grant of authority included authority to bind Ms. Morgan to the Arbitration Agreement in the DRP. *See Canyon Sudar Partners, LLC v. Cole ex rel. Haynie*, Civil Action No. 3:10-1001, 2011 WL 1233320, at *5-6 (S.D.W. Va. Mar. 29, 2011) (compelling arbitration under a nearly identical dispute resolution program based on authority conferred by a similar power of attorney).[3]

The Power of Attorney thus empowered Defendant to execute the Arbitration Agreement, which is supported by ample consideration because the parties exchanged mutual arbitration obligations, agreed to be bound by the outcome of arbitration, and the Facility consented to pay 90% of arbitration fees. (DRP at 4.) *See Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 287 (M.D.N.C. 2005) ("The only reciprocal promises necessary for consideration is that both parties agree to be *bound* by the rules of the arbitration procedure and its result, irrespective of whose claims must be arbitrated.") (emphasis in original). Thus, Ms. Morgan was bound by the Arbitration Agreement, as is Defendant who "stands in her shoes" in asserting wrongful death claims on behalf of her estate. *See id.* at 288-89 (explaining that under North Carolina law, "the estate's potential for recovery [for wrongful death] is legally derivative of [the decedent's] own ability to recover. Because [the decedent's] ability was limited in form to arbitration by her

---

[3] Other courts also have construed broad powers of attorney as authorizing an agent to sign arbitration agreements for nursing home residents. *See, e.g., Sovereign Healthcare of Tampa, LLC v. Huerta*, 14 So.3d 1033, 1035 (Fla. Dist. Ct. App. 2009) (enforcing arbitration agreement signed by power of attorney who was given a "broad and unambiguous grant of authority" to act for a nursing home resident, including authority "to sign any and all releases or consents required" for hospitalization); *Triad Health Mgt. of Ga. III, LLC v. Johnson*, 679 S.E.2d 785, 789 (Ga. Ct. App. 2009) (concluding that resident's son was empowered to sign nursing home arbitration clause pursuant to a power of attorney that conferred "'full power and authority to do and perform all and every act . . . necessary, requisite or proper to be done . . .' without specific limitation"); *Owens v. National Health Corp.*, 263 S.W.3d 876, 883-85 (Tenn. 2007).

execution of the agreement with [the defendant], her estate is equally bound by the arbitration agreement." (footnote omitted)).  Moreover, under the DRP, the Arbitration Agreement expressly "BIND[S] [Ms. Morgan's] FAMILY, HEIRS . . . TRUSTEES AND/OR [HER] LEGAL REPRESENTATIVES, INCLUDING THE PERSONAL REPRESENTATIVE OR EXECUTOR OF [HER] ESTATE."  (DRP at 2.)  *See Wilkerson*, 395 F. Supp. 2d at 288 (compelling arbitration of wrongful death claim, in part, because the "language [of the arbitration agreement] clearly includes an estate claim, which is brought through the deceased.").

In sum, there is no question that the Arbitration Agreement was binding on Ms. Morgan. Accordingly, the estate and Defendant, acting on behalf of the estate, are likewise bound by the Arbitration Agreement in the State Court Action.

This outcome also is dictated by Section 2 of the FAA, 9 U.S.C. § 2.  Here, Defendant invoked the Power of Attorney to execute for Ms. Morgan not only the Arbitration Agreement, but also the Admission Contract and all of the other documents that he signed on her behalf. Thus, Defendant cannot have it both ways: If the Power of Attorney authorized Defendant to sign the Admission Contract, it also authorized him to sign the Arbitration Agreement as well. *Cf. Barron v. The Evangelical Lutheran Good Samaritan Soc'y*, --- P.3d ---, No. 29,707, 2011 WL 4809827, at *12 (N.M. Ct. App. May 31, 2011) (compelling arbitration and reasoning that if a nursing home resident's granddaughter had no authority to sign an optional arbitration agreement, she "would then have lacked the authority to agree to the Admission Agreement, or to admit [her grandmother] to the facility.  Thus, not only would the arbitration clause be invalidated by [the granddaughter's] lack of authority, the validity of the entire Admission Agreement would be equally vulnerable." (internal quotation marks and alterations omitted).)

13

Under the FAA, Defendant may not ask this Court to single out the Arbitration Agreement by requiring Plaintiff to make a special showing of proof as to Defendant's own authority to consent to it that is not required or otherwise equally applicable to the Admission Contract and other documents that Defendant signed for Ms. Morgan. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (noting that under Section 2 of the FAA, "[a] court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes non-arbitration agreements under state law"). That is precisely what Section 2 of the FAA forbids. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) ("What States may not do is decide that a contract is fair enough to enforce all of its basic terms (price, service, credit) but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [FAA's] language and Congress' intent."); see also *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("By enacting § 2, we have several times said, Congress precluded States from singling out Arbitration Agreements for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" (citation omitted)).

In sum, Defendant had actual and apparent authority to bind Ms. Morgan to the DRP, including the Arbitration Agreement contained therein, in light of the authority that Ms. Morgan conferred upon Defendant in the Power of Attorney.

### 2. Ms. Morgan Was Bound To Arbitrate as a Third-Party Beneficiary

*Second*, Ms. Morgan had an independent duty to arbitrate because she was a third-party beneficiary of the Admission Contract, of which the Arbitration Agreement is a part. North Carolina courts have applied the third-party beneficiary doctrine to require third-party intended beneficiaries to arbitrate claims pursuant to an arbitration clause. *See LSB Fin. Servs., Inc. v.*

*Harrison*, 144 N.C. App. 542, 548-50, 548 S.E.2d 574, 578-79 (2001).  The doctrine applies

where: (1) a contract exists between two other persons; (2) the contract is valid and enforceable;

and (3) the contract was entered into for the third party's direct benefit.  *See id.* at 548, 548

S.E.2d at 578 n.1.

All of these elements are present.  Here, there is no denying that the Admission Contract

is a valid and enforceable agreement that Defendant executed pursuant to the Power of Attorney

so that Ms. Morgan would receive the full benefits of admission and treatment at Statesville.

This is readily apparent from the fact that the Admission Contract specifically identifies Ms.

Morgan as the "Resident" to be admitted to the Facility.  (A.C. at 1.)   The same is true of the

Arbitration Agreement, except that it was purely voluntary and not a precondition to Ms.

Morgan's admission to the Facility.  (DRP at 1.)  Even so, after Defendant chose to sign the DRP

(and its 30-day revocation period expired), the Admission Contract incorporated the Arbitration

Agreement which thereafter was an integrated term of the Contract.  (A.C. at 9, § VII.)

In sum, Ms. Morgan was a third-party beneficiary of the Arbitration Agreement, and

Defendant is thus required to arbitrate the estate's claims against Plaintiff in the State Court

Action.  The court in *Cook v. GGNSC Riply, LLC*, 786 F. Supp. 2d 1166, 1171-72 (N.D. Miss.

2011), reached the same conclusion under a virtually identical fact pattern, and other courts have

compelled arbitration in similar circumstances.  *See, e.g., JP Morgan Chase & Co. v. Conegie*,

492 F.3d 596, 600 (5th Cir. 2007) (holding that non-signatory resident was bound as a third-party

beneficiary to an arbitration clause in a nursing home admission contract that her mother

executed on her behalf); *THI of S.C. at Columbia, LLC v. Wiggins*, C/A No. 3:11-888-CMC,

2011 WL 4089435, at *6 (D.S.C. Sept. 13, 2011); *Trinity Mission Health & Rehabilitation of*

*Clinton v. Estate of Scott ex rel. Johnson*, 19 So. 3d 735 (Miss. Ct. App. 2008); *Alterra*

*Healthcare Corp. v. Estate of Linton ex rel. Graham*, 953 So. 2d 574, 579 (Fla. Ct. App. 2007) (per curiam) ("[The deceased resident] was an intended third-party beneficiary of the [residency] agreement [signed by her son]. A nonsignatory third-party beneficiary is bound by the terms of a contract containing an arbitration clause."); *Owens v. Coosa Valley Health Care, Inc.*, 890 So.2d 983, 987 (Ala. 2004) (same).

Moreover, Defendant himself is a third-party beneficiary of the Arbitration Agreement insofar as Defendant expressly acknowledged in the DRP, on behalf of his mother (Ms. Morgan), that "YOU AGREE THAT YOUR PARTICIPATION IN [THE] DRP WILL BENEFIT AND BIND YOUR FAMILY, HEIRS, SUCCESSORS . . . AND/OR YOUR LEGAL REPRESENTATIVES, INCLUDING THE PERSONAL REPRESENTATIVE OR EXECUTOR OF YOUR ESTATE . . . ." (DRP at 2 (all-caps in original).) Defendant fits within each of the above-named categories of persons who Defendant himself recognized were beneficiaries of the Arbitration Agreement. As such, Defendant is bound to abide by it.

In short, because Ms. Morgan was a third-party beneficiary, Defendant must arbitrate the estate's claims against Plaintiff pursuant to the Arbitration Agreement.

### 3.    Defendant Must Arbitrate Pursuant to Equitable Estoppel

*Finally*, Ms. Morgan and Defendant also are bound to the Arbitration Agreement pursuant the equitable estoppel doctrine. Equitable estoppel is an independent basis under North Carolina law to enforce an Arbitration Agreement against a non-signatory to the agreement. *See Harrison*, 144 N.C. App. at 548-49, 548 S.E.2d at 578-79 ("In the context of arbitration, the doctrine of equitable estoppel may be used to stop a party from asserting that . . . 'the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provision of the same contract should be enforce to

16

benefit him'.") (quoting *International Paper v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)).

Here, the Arbitration Agreement was incorporated into the Admission Contract and made a part of the agreement that governed Ms. Morgan's residency. (A.C. at 9, § VII.) After Defendant signed these documents on Ms. Morgan's behalf, Ms. Morgan became a resident at Statesville and both Ms. Morgan and Defendant received the benefits that the Admission Contract accorded them, as well as the benefits of the DRP, including its Arbitration Agreement. (DRP at 2 ("YOU AGREE THAT YOUR PARTICIPATION IN [THE] DRP WILL BENEFIT AND BIND YOUR FAMILY, HEIRS . . . AND/OR . . . THE PERSONAL REPRESENTATIVE OR EXECUTOR OF YOUR ESTATE . . . .") (all-caps in original).[4] Thus, it would be inequitable to permit Defendant, as the executor of Ms. Morgan's estate, to avoid the Arbitration Agreement that was part of the Admission Contract. *See Wiggins*, 2011 WL 4089435, at *6 (enforcing Arbitration Agreement under analogous circumstances) (citing *International Paper*, 206 F.3d at 417-18). Accordingly, Defendant must arbitrate his claims against Plaintiff in the State Court Action. As explained above, the Arbitration Agreement is valid and enforceable under the FAA.

**B.**     **Defendant's Claims Are within the Scope of the Arbitration Agreement**

Defendant's claims against Plaintiff in the State Court Action are squarely within the scope of the Arbitration Agreement. The Arbitration Agreement applies to any covered "dispute" between the parties, including any "cause of action arising out of or relating in any

---

[4] The Arbitration Agreement in the DRP secured an additional benefit for Ms. Morgan and Defendant of knowing that disputes covered by the DRP could be resolved quickly and cost-effectively. (DRP at 1.) This was a benefit that the Power of Attorney authorized Defendant to pursue by empowering him take action "for the purpose of conserving my property, benefiting my descendents and other relatives . . . . [and] protect[ing] my assets from being dissipated to pay for the costs of health, medical, or nursing home expenses . . . ." (POA at 5, Art. I ¶ 15.)

way to [Ms. Morgan's] stay at the [F]acility." (DRP at 2.) The claims for wrongful death and negligence that Defendant has asserted against Plaintiff in the State Court Action stem directly from the care and treatment that Ms. Morgan allegedly received during her residency at Statesville. (Compl. ¶ 81 (Count IV—negligence/wrongful death: alleging ways that "[t]he Sava Defendants" (a group that includes Plaintiff) "failed to meet the appropriate standards of care and practice" which they owed to Ms. Morgan, including failing "to provide her with a competent physician and staff;" "fail[ing] to properly monitor and oversee the conduct of their employees and services provided to Ms. Morgan;" and "fail[ing] to provide reasonable care and diligence, and best judgment, in providing medical care to [Ms.] Morgan"); *see id.* ¶¶ 88-92 (Count V— negligence *per se*: alleging that Plaintiff's violation of federal and state statutes and regulations "imposing specific duties on the operators of nursing homes for the protection of the residents of said facilities" "proximately caused [Ms.] Morgan's injuries and death, as set forth with more particularity in the Fourth Cause of Action [for wrongful death].").  *See Wilkerson*, 395 F. Supp. 2d at 286 ("If the arbitration agreement is enforceable, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (citing *Moses H. Cone Mem'l Hosp*, 460 U.S. at 25)).

In sum, the Arbitration Agreement is valid and enforceable and Defendant's claims against Plaintiff are within its scope. Accordingly, the FAA prohibits Defendant from pursuing the State Court Action and requires him to arbitrate.

## C.   Numerous Courts Have Enforced Arbitration Agreements Involving Nursing Home Care

In a prior case, the United States District Court for the Southern District of West Virginia enforced an arbitration clause in a dispute resolution program nearly identical to the DRP in this case. *See Haynie*, 2011 WL 1233320, at *1. *Haynie* is consistent with decisions by other courts

18

across the United States that have enforced arbitration agreements in nursing home cases. *See, e.g., Northport Health Servs. Of Ark., LLC v. Rutherford*, 605 F.3d 483, 491-92 (8th Cir. 2010); *Wiggins*, 2011 WL 4089435, at *8; *Cook*, 786 F. Supp. 2d at 1171-72; *Thompson v. THI of New Mexico at Casa Arena Blanca, LLC*, No. CIV 05-1331 JB/LCS, 2006 WL 4061187, at *15 (D.N.M. Sept. 12, 2006); *Barron*, 2011 WL 4809827, at *13-14; *see also, e.g., Miller v. Cotter*, 863 N.E.2d 537, 547 (Mass. 2007) (enforcing arbitration agreement signed as part of nursing home admission process); *Hogan v. County Villa Health Serv.*, 148 Cal. App. 4th 259, 271 (Cal. Ct. App. 2007) (reversing denial of nursing home's motion to compel arbitration of claims brought by children of deceased resident); *Alterra Healthcare Corp. v. Bryant*, 937 So. 2d 263, 270-71 (Fla. Dist. Ct. App. 2006) (compelling arbitration of resident claims against assisted living facilities); *Sanford v. Castleton Healthcare Ctr., LLC,* 813 N.E.2d 411, 422 (Ind. Ct. App. 2006) (compelling arbitration of estate representative's survivor and wrongful death claims against nursing home); *Hanson v. Valley View Nursing & Rehab. Ctr.*, No. 23001, 2006 WL 2060575, at *3 (Ohio Ct. App. July 26, 2006) (granting nursing home's motion to stay pending arbitration of estate representative's medical malpractice action); *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 557 (N.C. Ct. App. 2006) (finding that arbitration clause was not unconscionable; reversing denial of assisted-living facility's motion to compel arbitration); *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So.2d 661 (Ala. 2004) (per curiam); *Owens v. Coosa Valley Healthcare, Inc.*, 890 So. 2d 983, 990 (Ala. 2004) (affirming order compelling estate representative to arbitrate claims against nursing home). The same outcome is compelled here by the parties' Arbitration Agreement. Accordingly, Plaintiff's Motion should be granted.

## III.    THE FAA'S INTERSTATE COMMERCE REQUIREMENT IS SATISFIED

The FAA applies to arbitration agreements that are part of a written contract "evidencing a transaction involving interstate commerce." 9 U.S.C. § 2. "The [FAA's] requirement that the

19

underlying transaction involve commerce is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." *Comanche Indian Tribe of Okla. v. 49, LLC*, 391 F.3d 1129, 1132 (10th Cir. 2004) (citation and quotation marks omitted). "The Supreme Court has stated that the FAA's 'involving commerce' requirement 'reaches not only the actual physical interstate shipment of goods but also *contracts relating to interstate commerce*." *Id.* (emphasis added) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967) (quoting H.R. Re.p. No. 96, 68th Cong., 1st Sess. 1 (1924))); *see also Allied-Bruce*, 513 U.S. at 273-74 (holding that "involving commerce" is the functional equivalent of "affecting commerce").

The term "involving" commerce in the FAA is construed in the broadest permissible sense under the Commerce Clause. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (citing *Allied-Bruce*, 513 U.S. at 273-74; *Perry*, 482 U.S. at 490). The interstate commerce requirement is met if "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control'." *Citizens Bank*, 539 U.S. at 56-57 (citation omitted); *see also Wiggins*, 2011 WL 4089435, at *1 n.3 ("The FAA has an expansive reach, similar to the Commerce Clause, such that an arbitration clause merely 'affecting' interstate commerce would be covered by the statute.").

The FAA's interstate commerce requirement is satisfied because the Facility engaged in the business of providing long-term healthcare, and the parties expressly acknowledged as much at page 5 of the DRP. *See Wilkerson*, 395 F. Supp. 2d at 285 n.3 ("Even without reference to the [FAA], it is clear the FAA would govern by its own terms because the medical treatment that [the healthcare provider] offers is part of an economic activity, in the aggregate, which involves interstate commerce."). Thus, the Arbitration Agreement necessarily involved transactions that

affected interstate commerce. For example, Statesville was certified under the federal Medicare program to accept Medicare patients, like Ms. Morgan and other residents. (Declaration of Darryl P. Ehlers ("Decl.") ¶ 3.) As a result, Medicare paid for Ms. Morgan's care at Statesville. To date in 2011, Medicare has paid a total of $2,869,423 to the Facility. (Decl. ¶ 3.) During Ms. Morgan's residency at Statesville, Medicare paid $8,780.80 for her care and treatment. (Decl. ¶ 3.) The Facility's requests for Medicare payments for services rendered to Ms. Morgan and other residents were sent electronically to Trailblazer Health Enterprises, LLC ("Trailblazer"), which is located in Dallas, Texas. (Decl. ¶ 4.) Trailblazer is a fiscal intermediary that processes Medicare payments to Statesville. (Decl. ¶ 4.)

During Ms. Morgan's residency, Statesville also was certified to, and did, receive payments from the North Carolina Medicaid program, a substantial portion of which was funded by the Federal Government. (Decl. ¶ 5.) Thus far in 2011, Medicaid has paid in excess of $3 million to the Facility. (Decl. ¶ 5.)

In addition, Statesville purchased goods and services from vendors located in multiple states outside of North Carolina. (Decl. ¶¶ 6-10.) For example, pharmacy products, medical supplies and resident beds that were used for Ms. Morgan's and other residents' care and treatment were purchased from out-of-state vendors and shipped across state lines to Statesville. (Decl. ¶¶ 6-8.) Similarly, administrative and clinical-consulting services were provided by companies with employees who reside outside of North Carolina. (Decl. ¶¶ 9-10.)

The Supreme Court has determined that activities like these more than satisfy the interstate commerce requirement. *See Katzenbach v. McClung* 379 U.S. 294, 299-300 (1964) (restaurant's purchase of $70,000 of food that have moved across state lines sufficiently affected interstate commerce). Likewise, other courts have held that such activities affect "interstate

commerce" for FAA purposes. *See, e.g., Haynie*, 2011 WL 1233320, at *10 (concluding that the FAA's interstate commerce requirement was met under similar circumstances); *Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007) ("[A]ccepting payment from Medicare, a Federal program, [] constitutes an act in interstate commerce" for FAA purposes); *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (per curiam) (noting that Medicare funds crossing state lines is "interstate commerce" under the FAA); *Owens v. Coosa County Healthcare, Inc.*, 890 So. 2d 983, 988-89 (Ala. 2004) (compelling arbitration of personal injury and wrongful death claims against nursing home where medical supplies and equipment were purchased out of state, several patients at nursing home were from other states, and funding was received from Medicare); *McGuffey Health & Rehab. Ctr. v. Gibson,* 864 So. 2d 1061, 1062-63 (Ala. 2003) (enforcing arbitration agreement in a nursing home case where Medicare provided partial funding for the patient, and medications, supplies, and equipment used for patient care were purchased out of state); cf. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 329-30 (1991) (holding that interstate commerce requirement under the Sherman Act was met where defendants served non-resident patients, received reimbursements through Medicare payments, and sent peer review reports across state lines). Accordingly, the FAA's interstate commerce requirement is satisfied here.

## IV.     FEDERAL AND STATE COURT PROCEEDINGS MUST BE STAYED

Upon a determination by this Court to enter an order compelling arbitration, Plaintiff respectfully moves to stay this proceeding and Defendant's State Court Action. Under the All Writs Act, 28 U.S.C. § 1651, and Anti-Injunction Act, 28 U.S.C. § 2283, this Court may enjoin the State Court Action to protect or effectuate its determination to compel arbitration pursuant to

the Arbitration Agreement.[5]    The FAA requires a stay of this proceeding under those circumstances:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .***

9 U.S.C. § 3 (emphasis added).    Accordingly, Plaintiff asks this Court to stay all judicial proceedings, pending arbitration in accordance with the Arbitration Agreement.

Alternatively, this Court should enter an order precluding Defendant from prosecuting his claims against Plaintiff anywhere other than in an arbitral forum in accordance with the Arbitration Agreement.    *See Wiggins*, 2011 WL 4089435, at *9 (enforcing Arbitration Agreement and "permanently enjoin[ing] [a state court plaintiff] from prosecuting her dispute [with a nursing home] in anything other than an arbitral forum as provided in the Arbitration Agreement").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to compel arbitration and to stay all related federal and State Court proceedings should be granted in its entirety.

---

[5] *See Blimpie Int'l, Inc. v. Butterworth*, No. 1:05-CV-0131-JDT-WTL, 2005 WL 756218, at *10-11 (S.D. Ind. Mar. 9, 2005) ("In the absence of an injunction, the validity of this court's order compelling arbitration could be threatened; Butterworth and Hunter could proceed against Blimpie and Blimpie Leasing in state court, forcing them to litigate claims which this court has determined are subject to arbitration.  Thus, the court in its discretion may enjoin the state court proceedings as necessary to protect and effectuate its judgment compelling arbitration in this action."); *McGuire, Cornwell, & Blakey v. Grider*, 765 F. Supp. 1048, 1052 (D. Colo. 1991) ("[A] stay of [a state court action] is justified to protect or effectuate [the court's] order compelling arbitration.").

RESPECTFULLY SUBMITTED, this the 1st day of June, the year 2012.

SSC STATESVILLE MAPLE LEAF OPERATING COMPANY LLC

BY:    WILKINS TIPTON, P.A.


_____ /s/ Bradley K. Overcash_____

BRADLEY K. OVERCASH
N.C. Bar No.: 36978

OF COUNSEL:

WILKINS TIPTON, P.A.
South Tyron Square
201 South Tryon Street, Suite 1475
Charlotte, North Carolina 28202 -3212
Phone:  704-676-6066
Fax:  704-676-6068
*Attorneys for Plaintiff SSC Statesville Operating Company LLC*

NORTH CAROLINA )
                      )          HEALTH CARE POWER-OF-ATTORNEY
IREDELL COUNTY )

1. _Designation of Health Care Agent_: I, **Dorothy Mae Law Morgan**, being of sound mind, hereby appoint **William P. Morgan, Jr. and/or Tina Laws Morgan** as my health care attorney-in-fact (herein referred to as my "health care agent") to act for me and in my name (in any way I could act in person) to make health care decisions for me as authorized in this document

If the persons named above predecease me, then I appoint the following persons to serve in that capacity:

Survivor(s) of William P. Morgan, Jr. and Tina Laws Morgan

Each successor health care agent designated shall be vested with the same power and duties as if originally named as my health care agent..

2. _Effectiveness of Appointment_: Absent revocation, the authority granted in this document shall become effective when and if the attending physician or physicians designated below determine that I lack sufficient understanding or capacity to make or communicate decisions relating to my health care and will continue in effect during my incapacity, until my death, and beyond if any anatomical gift, autopsy or disposition of remains has been authorized. This determination shall be made by the following physician or physicians:

Any attending physician

3. _General Statement of Authority Granted_: Except as indicated in section 4 below, I hereby grant to my health care agent named above full power and authority to make health care decisions on my behalf, including, but not limited to, the following:

a. To request, review and receive any information, verbal or written, regarding my physical or mental health, including, but not limited to, medical and hospital records, and to consent to the disclosure of this information;

b. To employ or discharge my health care providers.

c. To consent to and authorize my admission to and discharge from a hospital, nursing or convalescent home or other institution;

d. To give consent for, to withdraw consent for, or to withhold consent for, X-ray, anesthesia, medication, surgery and all other diagnostic and treatment procedures ordered by or under the authorization of a licensed physician, dentist, or podiatrist. The authorization specifically includes the power to consent to measures for relief of pain;

1



MORGAN_000328

e.     To authorize the withholding or withdrawal of life-sustaining procedures when and if my physician determines that I am terminally ill, permanently in a coma, suffer severe dementia, or am in a persistent vegetative state. Life-sustaining procedures are those forms of medical care that only serve to artificially prolong the dying process and may include mechanical ventilation, dialysis, antibiotics, artificial nutrition and hydration, and other forms of medical treatment which sustain, restore or supplant vital bodily functions. Life-sustaining procedures do not include care necessary to provide comfort or alleviate pain.

> I desire that my life not be prolonged by life-sustaining procedures if I am terminally ill, permanently in a coma, suffer severe dementia, or am in a persistent vegetative state.

f.     To exercise any right I may have to make a disposition of any part or all of my body for medical purposes, to donate my organs, to authorize an autopsy and to direct the disposition of my remains.

g.     To take any lawful actions that may be necessary to carry out these decisions, including the granting of releases of liability to medical providers.

4.     <u>Special Provisions and Limitations</u>:  In exercising the authority to make health care decisions on my behalf, the authority of my health care agent is subject to the following special provisions and limitations: _____

_____

5.     <u>Guardianship Provision</u>:  If it becomes necessary for a court to appoint a guardian of my person, I nominate my health care agent acting under this document to be the guardian of my person, to serve without bond or security.

6.     <u>Reliance of Third Parties on Health Care Agent</u>.

a.     No person who relies in good faith upon the authority of or any representations by my health care agent shall be liable to me, my estate, my heirs, successors, assigns, or personal representatives, for actions or omissions by my health care agent.

b.     The powers conferred on my health care agent by this document may be exercised by my health care agent alone, and my health care agent's signature or act under the authority granted in this document may be accepted by persons as fully authorized by me and with the same force and effect as if I were personally present, competent and acting on my own behalf.  All acts performed in good faith by my health care agent pursuant to this power-of-attorney are done with my consent and shall have the same validity and effect as if I were present and exercised the powers myself, and shall inure to the benefit of and bind me, my estate, my heirs, successors, assigns, and personal representatives.  The authority of my health care agent pursuant to this power-of-attorney shall be superior to and binding upon my family, relatives, friends, and other.

2

MORGAN_000329

7.    Miscellaneous Provisions.

a.    I revoke any prior health care power-of-attorney.

b.    My health care agent shall be entitled to sign, execute, deliver, and acknowledge any contract or other document that may be necessary, desirable, convenient, or proper in order to exercise and carry out any of the powers described in this document and to incur reasonable costs on my behalf incident to the exercise of these powers; provided, however, that except as shall be necessary in order to exercise the powers described in this document relating to my health care, my health care agent shall not have any authority over my property or financial affairs.

c.    My health care agent and my health care agent's estate, heirs, successors, and assigns are hereby released and forever discharged by me, my estate, my heirs, successors, and assigns and personal representatives from all liability and from all claims or demands of all kinds arising out of the acts or omissions of my health care agent pursuant to this document, except for willful misconduct or gross negligence.

d.    No act or omission of my health care agent, or of any other person, institution, or facility acting in good faith in reliance on the authority of my health care agent pursuant to this health care power-of-attorney shall be considered suicide, nor the cause of my death for any civil or criminal purposes, nor shall it be considered unprofessional conduct or as lack of professional competence. Any person, institution, or facility against whom criminal or civil liability is asserted because of conduct authorized by this health care power-of-attorney may interpose this document as a defense.

8.    Signature of Principal.  By signing here, I indicate that I am mentally alert and competent, fully informed as to the contents of this document and understand the full import of this grant of powers to my health care agent.

This _16th_ day of _April_____, _2010_.

                        _Dorothy Mae Law Morgan_(SEAL)
                        Dorothy Mae Law Morgan

3

MORGAN_000330

I hereby state that the Principal, Dorothy Mae Law Morgan, being of sound mind, signed the foregoing health care power-of-attorney in my presence and that I am not related to the principal by blood or marriage and I would not be entitled to any portion of the estate of the principal under any existing will or codicil of the principal, or as an heir under the Intestate Succession Act if the principal dies on this date without a will. I also state that I am not the principal's attending physician, nor an employee of the principal's attending physician, nor an employee of a health facility in which the principal is a patient, nor an employee of a nursing home or any group-care home where the principal resides. I further state that I do not now have any claim against the principal.

_Grace O. Brier_
Witness

_April 16, 2010_
Date

_Mary H. Meredith_
Witness

_April 16, 2010_
Date

NORTH CAROLINA     )
IREDELL COUNTY     )

I, a Notary Public for the County and State aforesaid, hereby certify that **Dorothy Mae Law Morgan**, the principal, appeared before me and swore to me and to the witnesses in my presence that this instrument is a health care power-of-attorney, and that she had willingly and voluntarily made and executed it as her free act and deed for the purposes expressed in it.

I further certify that _Grace A. Brier_ and _Mary H. Meredith_, witnesses, appeared before me and swore that they witnessed the principal sign the attached health care power-of-attorney, believing her to be of sound mind; and also swore that at the time they witnessed the signing (i) they were not related within the third degree to the principal or to the principal's spouse, and (ii) they did not know, nor have a reasonable expectation that they would be entitled to any portion of her estate upon her death under any will or codicil thereto then existing or under the Intestate Succession Act as it provides at that time, and (iii) they were not a physician attending the principal, nor an employee of an attending physician, nor an employee of a health facility in which the principal was a patient, nor an employee of a nursing home or any group-care home in which she resided, and (iv) they did not have a claim against the principal. I further certify that I am satisfied as to the genuineness and due execution of the instrument.

This the _16th_ day of _April_, _2010_.

_Vickie Jackson-Robertson_
Notary Public

My Commission expires: _5-9-10_

4

**MORGAN_000331**

I, William P. Morgan, Jr. and Tina Laws Morgan, agree to act as health care agent for **Dorothy Mae Law Morgan**, pursuant to this health care power-of-attorney.

This _16_ day of _April_, 2010.

1

MORGAN_000332